UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DOUG OPPENHEIMER,
a/k/a Phillip Douglas Oppenheimer,

    Plaintiff,

           v.

CITY OF MADEIRA, OHIO, et al.,

    Defendants.

Case No. 1:19-cv-770

Cole, J.
Bowman, M.J.

## REPORT AND RECOMMENDATION

Plaintiff Doug Oppenheimer initiated this lawsuit in September 2019, alleging that the Defendants violated his civil rights under 42 U.S.C. §1983. On December 23, 2019, Plaintiff filed an amended complaint against the City of Madeira, Ohio, David Schaefer and two John Does (collectively "the City"). Currently pending is Plaintiff's motion for summary judgment. (Doc. 43). For the reasons that follow, Plaintiff's motion should be GRANTED in part and DENIED in part.

    **I.    Standard of Review**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, a court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden of showing an absence of evidence to support the

1

nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

The City implicitly concedes the lack of any genuine issue of material fact. Standing Orders on Civil Procedures of the presiding judge require a party moving for summary judgment to file a document entitled "Proposed Undisputed Facts" that sets forth each material fact as to which the moving party contends there is no genuine issue to be tried. Each Proposed Undisputed Fact must be supported by a specific citation or citations to record evidence. In any opposition to a motion for summary judgment, the non-moving party must attach a "Response to Proposed Undisputed Facts" that states, in corresponding fashion, whether each fact asserted by the moving party is admitted or denied. If denied, the denial must be supported with a citation to contrary evidence. The non-moving party's response also must include a list of each issue of material fact that the opposing party contends must be tried.

On March 23, 2021, after noting that Plaintiff had moved for summary judgment without including the requisite statement of "Proposed Undisputed Facts," the undersigned directed him to do so. (Doc. 45). Plaintiff immediately complied with that Order by filing his Proposed Undisputed Facts the same day. (Doc. 46).

The City sought an extension of time in which to file a response in opposition, which extension was granted through April 26, 2021. A day after that deadline on April 27, 2021,[1] the City filed its opposition to summary judgment <u>without</u> filing its required

---

[1] This is not the first occasion in this record in which the City has disregarded Court deadlines without seeking appropriate leave of Court. (*See, e.g.*, Doc. 30, 38).

2

response to the Proposed Undisputed Facts. On May 3, 2021, the undersigned filed an Order reminding defense counsel of the requirements of the Standing Order, and directing Defendant to respond to the Plaintiff's Proposed Undisputed Facts within ten (10) days. (Doc. 49). Defendant still filed no response. Accordingly, the undersigned adopts the Plaintiff's Proposed Undisputed Facts in their entirety as the Findings of Fact.

II. Findings of Fact[2]

1. Plaintiff Doug Oppenheimer has been a resident in the City of Madeira for more than 30 years.

2. For several years, Plaintiff has acted as a governmental watchdog over his local government and has been highly critical of the current administration in the City of Madeira.

3. In order to express and publicize his criticism of the Madeira City Council, Plaintiff posted two yards signs at his residence in the City of Madeira on September 9, 2019, one sign calling upon the removal of the "Clowns on City Council" and the second sign advocating the election of reformers at the forthcoming municipal election.

4. Each sign measured sixteen square feet in area.

5. The two signs did not announce a charitable, institutional or civic event.

6. Upon posting the two signs, Plaintiff was contacted by David Schaeffer, the City's police chief, who apprised him that the two yard signs violated certain provisions of Chapter 159 of the Codified Ordinances of the City of Madeira ("*Sign Regulations*") and needed to be taken down.

---

[2] The referenced facts are supported with citations to the record, (*see* Doc. 46), which the undersigned finds no need to restate in light of their undisputed nature. The undersigned has made minor textual changes to the Proposed Facts submitted by Plaintiff.

3

7. In response, Plaintiff asked which specific provisions of the *Sign Regulations* were being violated; Chief Schaefer indicated something would be delivered to Plaintiff later that day.

8. Later on September 9, 2019, another City police officer delivered a copy of the pertinent *Sign Regulations*.

9. In delivering the *Sign Regulations*, the police officer reiterated that the two signs needed to be removed by the morning, and that if the signs were not removed, Plaintiff would be cited for violating the *Sign Regulations*.

10. As of September 9, 2019, the version of the *Sign Regulations* delivered to Plaintiff contained provisions that were relevant to his yard signs.

11. Section 159.20(A) of the *Sign Regulations* then in effect provided that, with respect to the placement of temporary signs on private property in a residential district: "No temporary sign shall be larger than six square feet in area except as provided in division (G)(4) below."

12. The applicable *Sign Regulations* provided an exception to allow for some types of "temporary" signs that were larger than six square feet in area. Thus, Section 159.20(G) of the Codified Ordinances provided that:

> Each temporary sign which displays a message concerning or related to an event shall be removed no later than five days, or such lesser period if specified below, after the event has occurred and the message, therefore, no longer serves its intended purpose. These event oriented signs shall include but not be limited to the following examples:
> …
> (4) Signs which announce charitable, institutional or civic events such as church bazaars, charitable fund raising events and similar announcements shall not exceed 50 square feet in area nor be more than eight feet high and must be removed within 24 hours of the conclusion of the event.

4

13. In addition, Section 159.20(C) of the *Sign Regulations* mandated that:

No more than one temporary sign per lot may be displayed at any one time, except for the following:

(1) One temporary sign for each street on which a lot fronts shall be permitted. Thus corner lots and through lots may have more than one sign displayed; and

(2) One single or double sided political sign per individual candidate and individual issue shall be permitted, except as to corner lots or through lots on which there may be placed one such sign facing or adjacent to each street abutting said lot.

14. In response to the immediate and threatened enforcement against him on September 9, 2019, Plaintiff removed the two signs posted at his residence lest he be subjected to the time, inconvenience and potential penalties associated with violating the *Sign Regulations*.

15. Following the commencement of this civil rights action, the Madeira City Council passed Ordinance No. 19-04, repealing certain provisions of the *Sign Regulations*, including Sections 159.20(A), 159.20(C) and 159.20(G), citing "the uncertainty surrounding the enforceability of the requirements pertaining to temporary signs in residential district" and the desire "to study, deliberate, and determine the best manner …with regulations pertaining to temporary signs in residential districts."

16. The offending provisions of the *Sign Regulations* were formally repealed by the Madeira City Council on September 23, 2019, at which time Plaintiff reposted the two signs in his yard.

17. At the time he removed the two yard signs and during the two-week period that he did not post the signs, Plaintiff desired to have continually posted the two signs that he had posted but removed due to the City's enforcement of its *Sign Regulations*.

5

18. During the two-week period that he did not post the two yard signs, Plaintiff desired to post additional signs concerning political matters, including supporting or opposing specific candidates for Madeira City Council. He desired to post more than one such sign in support or opposition to such candidates but did not do so in light of the prohibitions in the *Sign Regulations* and the threatened enforcement against him, including enforcement of the limitation on the number of political signs or signs with free speech messages.

### III. Analysis

#### A. The City is the Real Party in Interest

Although Plaintiff filed suit against the City of Madeira, its Chief of Police David Schaefer, and two "John Doe" City employees, Plaintiff has never identified or served the "John Doe" employees. In addition, it is clear that Plaintiff seeks relief against David Schaefer only in his official capacity. A suit against an employee in his or her official capacity is equivalent to a suit against the City. In other words, the City alone is the real party in interest in this case. *See generally*, *Kentucky v. Graham*, 473 U.S. 159 (1985); *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978); *Snyder v. U.S.*, 990 F.Supp.2d 818, 843 (S.D. Ohio 2014). Accordingly, the claims against David Schaefer and the John Doe Defendants should be dismissed as redundant. *Epperson v. City of Humboldt, Tenn.*, 140 F.Supp.3d 676, 683 (W.D. Tenn. 2015) (When, as here, the entity is a named defendant, official capacity claims against individual sheriffs and police officers are "redundant" and "superfluous.").

### B. The City Violated Plaintiff's First Amendment Rights

The First Amendment of the U.S. Constitution protects the free exercise of speech and other forms of communication, including that which is conveyed through the venerable tradition of posting yard signs. "Residential signs are an unusually cheap and convenient form of communication. Especially for persons of modest means or limited mobility, a yard or window sign may have no practical substitute." *City of Ladue v. Gilleo*, 512 U.S. 43, 57 (1994). On the record presented, Plaintiff's yard signs constituted the type of political speech that is at the core of the First Amendment. *See Buckley v. Am Constitutional Law Foundation, Inc.*, 525 U.S. 182, 186 (1999) (defining "core political speech" as involving "interactive communication concerning political change'") (quoting *Meyer v. Grant*, 486 U.S. 414, 422 (1988)); *McIntyre v. Ohio Elections Com'n*, 514 U.S. 334, 347 (1995) ("core political speech need not center on a candidate for office.").

To determine whether the challenged *Sign Regulations* violated the First Amendment during the time they remained in effect, this Court first must ask whether the regulations were content-based or content-neutral. *Ladue*, 512 U.S. at 58. In the case presented, the City does not dispute that the *Sign Regulations* contained content-based provisions at the time Plaintiff filed suit. For example, Sections 159.20(A) and 159.20(G)(4) of the *Sign Regulations* limited City residents from displaying yard signs greater than six square feet unless the content or subject matter of the signs announced "charitable, institutional or civic events such as church bazaars, charitable fund raising events and similar announcements." *See Thomas v. Bright*, 937 F.3d 721 (6th Cir. 2019) (analyzing billboard regulations that provided for content-based exceptions). Section 159.20(C)(2) was also content-based, because it allowed posting yard signs relating to a

7

candidate or ballot issue, but specifically limited political signs to one per candidate or ballot issue. See *Dimas v. City of Warren*, 939 F. Supp. 554, 558 (E.D. Mich. 1996). Last, Section 159.26(D)(2) of the Sign Regulations was content-based because it allowed "one additional sign…for each candidate or issue that the occupant wishes to support or oppose" after "the County Board of Elections has identified a candidate or issue that will be placed on the ballot at the next general or special election."

Content-based regulations are subject to a "strict scrutiny" standard of review, meaning they must be justified by a compelling or overriding interest. *Reed v. Town of Gilbert*, 576 U.S. 155 (2015). Because the referenced provisions of the *Sign Regulations* were content-based at the time suit was filed, the City "bears the burden of demonstrating the constitutionality" of the referenced regulations. *U.S. v. Playboy Entertainment Grp., Inc.*, 529 U.S. 803, 816 (2000); *accord Ohio Citizen Action v. City of Englewood*, 671 F. 3d 564, 571 (6th Cir. 2012). Here, the City in this case has offered no justification at all for the challenged *Sign Regulations*, much less any compelling or overriding interest. Therefore, the referenced provisions violated Plaintiff's First Amendment Rights as a matter of law at the time he filed suit.

## C. Plaintiff is Entitled to Nominal Damages for the Past Violation

Although the City does not argue that the challenged *Sign Regulations* were constitutional at the time suit was filed, the City does argue that summary judgment should be denied because "this case has long been mooted" by the City's rapid repeal of the contested provisions <u>after</u> suit was filed. Based upon the City's repeal of the contested provisions, and its argument that "the record does not even remotely suggest[] [that the] contested portions would ever be resuscitated," the City maintains that "no case or

8

controversy remains" sufficient to support the Article III jurisdiction of this Court. (Doc. 48 at 1).

The City's argument is not new; it previously argued both that Plaintiff lacked standing and that the case was moot in a motion to dismiss, (*see* Doc. 28), as well as in its initial opposition to a temporary restraining order and/or preliminary injunctive relief. In the prior motion to dismiss, the City conflated the related doctrines of standing and mootness. "The doctrine of standing generally assesses whether that interest exists at the outset, while the doctrine of mootness considers whether it exists throughout the proceedings." *Uzuegbunam v. Preczewski*, 141 S.Ct. 792, 796 (2021).

Notably, in denying the City's prior motion, this Court flatly rejected the City's arguments that the entire case was moot. (*See* Doc. 31, extensively discussing why Plaintiff has standing, why the case is not moot as to Plaintiff's claim for nominal damages, and why the City had failed to carry its burden under Rule 12 to show that Plaintiff's claim for prospective relief was moot; Doc. 32, adopting Report and Recommendation ("R&R")). Undaunted by this prior analysis, the City once again argues the entire case is moot. "Plaintiff cannot demonstrate a concrete interest in pressing this litigation forward other than his nominal damages claim, which stems from being prevented from displaying signs for a short period of time." (Doc. 48 at 6). The City insists that if this Court were grant summary judgment and award Plaintiff the nominal damages that he seeks, that award would be akin to an "advisory opinion" because no case or controversy presently exists. (Doc. 48 at 5-6).

9

This Court has now repeatedly explained that a live case or controversy remains and that the case is not moot precisely *because* Plaintiff seeks nominal damages for his past harm.³

> [C]onsistent with the prior R&R, Plaintiff argues that his nominal monetary damages claim is not rendered moot by the City's repeal of the offending ordinance. I agree. The amended complaint alleges that Plaintiff took down his yard signs on September 9, 2019 but the repeal of the Sign Ordinance did not take place until September 23, 2019. Thus, Plaintiff seeks nominal damages for the actual harm that occurred over the two-week period when he was prohibited from displaying his signs by the Sign Ordinance then in effect.
>
> The Sixth Circuit consistently has held that a plaintiff may seek monetary damages as compensation for a past violation of a constitutional right, even if a claim for injunctive relief has been rendered moot by subsequent events.

(Doc. 31 at 5; *see also id*. at 6 and Order adopting R&R, Doc. 32 at 2, agreeing that the case is not moot because the nominal damages claim for alleged past harm "remains a live claim, notwithstanding any change to the City's ordinances."). To the extent that the City held on to hope that this Court would reverse course and ignore Sixth Circuit precedent, the Supreme Court's recent decision in *Uzuegbunam v. Preczewski* should have put that hope to rest. In *Uzuegbunam*, the Court held: "[F]or the purpose of Article III standing, nominal damages provide the necessary redress for a completed violation of a legal right." *Id*., 141 S. Ct. at 802.

Inexplicably, the City's response in opposition to summary judgment replays the same arguments. Ironically, the City quotes from the sole *dissenting* opinion in *Uzuegbunam* rather than from the majority opinion. *Id*., 141 S. Ct. at 803-805 (Roberts,

---

³On September 24, 2019, the undersigned first recommended that Plaintiff's motion for a temporary restraining order and for preliminary injunctive relief be denied as moot but that the case should proceed on Plaintiff's claim for monetary damages. (Doc. 9 at 3, adopted for the opinion of the Court at Doc. 10).

J., dissenting). Regardless of the City's unflagging desire for a different result, this Court has no power to ignore the law of this case, much less controlling Sixth Circuit and Supreme Court precedent on this issue. In short, Plaintiff is entitled to nominal damages for the actual constitutional injury caused by the offending provisions for the two weeks in which the *Sign Regulations* prohibited Plaintiff from displaying his yard signs.

### D. Plaintiff is not Entitled to Prospective Relief

In its prior motion to dismiss, the City also argued that Plaintiff's claims for declaratory and injunctive relief were moot. The prior R&R rejected the City's argument on that issue as well, but "without prejudice to present the same or similar arguments in a future dispositive motion if properly supported." (Doc. 31 at 9). Unlike Plaintiff's continuing live claim for nominal damages, the Court recognized that Plaintiff's claim for declaratory and injunctive relief could be rendered moot as long as the City could show it had unequivocally repealed the unconstitutional provisions. However, in the context of a motion to dismiss in which the Court's review was limited to the pleadings and Plaintiff had alleged that those provisions continued to be displayed on the City's website,[4] the City had failed to carry its burden of proof. Still, the R&R expressed "some doubt as to the continuing viability of prospective injunctive relief." (Doc. 31 at 9). In the Order adopting the R&R, the presiding district judge agreed.

> The Court further agrees that the Defendants failed to carry their burden, *at least so far*, in demonstrating that Oppenheimer's claim for prospective relief is moot. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (noting that the burden rests with the party arguing mootness).

---

[4] The Court pointed out that the amended complaint "contains some allegations, such as that the repealed ordinance continues to be displayed on the City's website, that leave open the possibility that not all prospective relief would be moot." (Doc. 31 at 8).

11

(Doc. 32 at 2-3) (emphasis added).

At this procedural juncture, in the context of the pending motion for summary judgment, it is Plaintiff as the moving party who must first carry his burden of production to show that he is entitled to declaratory and injunctive relief. Only after Plaintiff satisfies that initial burden does the City, as the non-moving party, have the burden of coming forward with evidence to prove that "declaratory and injunctive relief has been mooted." (Doc. 48 at 4). On the record presented, the undersigned now concludes that Plaintiff has not satisfied his initial burden to show that he remains entitled to any type of prospective relief. The record reflects that the City fully repealed the unconstitutional provisions on September 23, 2019, following which Plaintiff immediately displayed his yard signs without fear of violating any City regulations.

It reviewing Plaintiff's motion for summary judgment, it appeared to the undersigned that Plaintiff had abandoned his requests for declaratory and injunctive relief.[5] On its face the motion seeks only nominal damages and does not discuss *any* evidence that would support a claim for prospective relief, or even so much as refer to that claim. (*See* Doc. 43 at 13, arguing that Plaintiff "is entitled to an award of nominal damages."). In any event, Plaintiff offers no evidence to support the allegations in his amended complaint that the offending regulations continue to be displayed on the City's website, nor does he point to any evidence that would suggest that the City is likely to re-enact the unconstitutional regulations at the conclusion of this lawsuit. *Contrast City of Mesquite v. Aladdin's Castle, Inc.*, 102 S.Ct. 1070, 1074-75 and n.11 (1982) (holding that the repeal of unconstitutional language did not clearly demonstrate mootness where the

---

[5]Plaintiff addresses the claim only in his reply memorandum in response to the City's argument that the claim is moot.

12

city had already re-enacted a related restriction, and had stated its intention to re-enact the offending provision at issue).

To the extent that Plaintiff has not abandoned his requests for declaratory and injunctive relief, his concession that the City repealed the offending regulations, in combination with a lack of any evidence suggesting that the City would re-enact the same regulations, demonstrate that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *U.S. v. Concentrated Phosphate Export Ass'n*, 89 S.Ct. 361, 364 (1968) (holding that the record did not show clearly that the wrongful behavior would not recur in civil antitrust action where the only evidence supporting mootness was the defendants' statement of intent). The conclusion that the claim for prospective relief is moot at this point in time is further supported by recent Sixth Circuit cases. *See, e.g.*, *Thomas v. City of Memphis, Tennessee*, 996 F.3d 318 (6th Cir. 2021); *International Outdoor, Inc. v. City of Troy, Michigan*, 974 F.3d 690, 699 (6th Cir. 2020); *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 768 (6th Cir. 2019). "[T]he burden in showing mootness is lower when it is the government that has voluntarily ceased its conduct[,]" because the government's ability to "self-correct[ ] provides a secure foundation for a dismissal based on mootness so long as [the change] appears genuine." *Thomas*, 996 F.3d at 324 (quoting *Speech First*, 939 F.3d at 767 and *Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 981 (6th Cir. 2012)).

In *Speech First*, the Sixth Circuit explained that trial courts should examine the "totality of the circumstances" in reviewing mootness, but that prospective relief should be *presumed* to be moot when a governmental entity has taken formal legislative action to repeal an unconstitutional law, as the City of Madeira has done here.

> Determining whether the ceased action "could not reasonably be expected to recur," *Friends of the Earth*, 528 U.S. at 189, 120 S.Ct. 693, takes into account the totality of the circumstances surrounding the voluntary cessation, including the manner in which the cessation was executed.
>
> Where the government voluntarily ceases its actions by enacting new legislation or repealing the challenged legislation, that change will presumptively moot the case unless there are clear contraindications that the change is not genuine.

*Speech First, Incl*, 939 F.3d at 768[6]; *accord City of Troy*, 974 F.3d at 698-99 (affirming summary judgment to the City of Troy where that city had amended the offending provisions, the amendment appeared to be "genuine," and there was "no indication that the City of Troy intends to repeal the amendment"); *see also Brandywine, Inc. v. City of Richmond,* 359 F.3d 830 (6th Cir.2004).

Unlike the earlier posture of this case in the context of the City's motion to dismiss, it is Plaintiff's burden as the movant on summary judgment to overcome the *Speech First* presumption of mootness created by the City's legislative repeal of the offending *Sign Regulations* on September 23. But Plaintiff points to no such evidence in its memorandum in support of summary judgment.

By contrast, in addition to the undisputed evidence of repeal, the City points to evidence that all references to the offending Sign Regulations were removed from the City's website, and that a user who clicks on the relevant Madeira Code of Ordinances will be directed to a linked portable document ("PDF") that memorializes City Council's repeal of the offending portions of Chapter 159. (Doc. 36 at 9-10, Thompson Affidavit at

---

[6]*Speech First* considered actions by a state entity that fell short of formal legislative action. The Sixth Circuit held that "where a change is merely regulatory, the degree of solicitude the voluntary cessation enjoys is based on whether the regulatory processes leading to the change involved legislative-like procedures or were ad hoc, discretionary, and easily reversible actions." Because the university's regulatory were "ad hoc" and not effected through formal, legislative-like procedures, no presumption applied and the university did not meet its burden to show mootness. *Id.*

14

¶¶4-6; *see also* Doc. 48 at 8, Moeller Affidavit at ¶¶2-3). The City further represents that it "has been undergoing a lengthy process of crafting a Comprehensive Plan and overhauling its zoning code," that the *Sign Regulations* were considered on October 19, 2019, and that none of the contested and repealed provisions were recommended for re-enactment at that time. (Mueller Affidavit at ¶¶ 5-6).

In his reply memorandum, Plaintiff argues that the minutes of the Planning Commission "provide no indication or assurance concerning any future scope" of Sign Regulations, but merely state that the City Law Director

> sent Planning Commission an email… [that] identified sign code and other changes to consider. Regarding the sign code, [the Law Director] said the City is currently engaged in litigation over some provisions in the sign code. He would like to shuffle the sign code changes to the front of the line to provide an added measure of comfort for the court….

(Doc. 50-1, *Madeira Planning Commission Meeting Minutes*, 10/19/20). Again, it is the Plaintiff's burden to point to evidence to overcome the presumption that the City's legislative repeal of the offending provisions was genuine. Plaintiff can no longer rest on the allegations of his complaint because those allegations have been rebutted by the developed and uncontested record. The City does not need to give "assurances" that its legislative repeal will stick; *First Speech* teaches that the action of City Council was sufficient in and of itself.[7] Summary judgment therefore should be denied to Plaintiff and granted *sua sponte* to the City on Plaintiff's requests for declaratory and injunctive relief, because any claim for prospective relief is moot.

Even if a reviewing court were to disagree with the undersigned concerning the burden of proof on summary judgment and the presumption of mootness afforded to the

---

[7] With respect to the Planning Commission minutes, the only material fact is that the Planning Commission did not express an intent or recommend to City Council that it re-enact the repealed provisions.

15

City, the undersigned still would recommend against the award of prospective relief on the record presented. A federal court should generally refrain from granting prospective relief against a local government where the likelihood of further violations is as remote as has been demonstrated here. *See, generally, Concentrated Phosphate Export Ass'n*, 89 S.Ct. at 364 (suggesting that even when a case is not moot, a trial court should evaluate the necessity of prospective relief).

### E. The Amount of Nominal Damages and Attorney's Fees

Plaintiff seeks nominal damages for the two weeks in September of 2019 during which his Free Speech rights were unconstitutionally curtailed. Rather than seeking a specific sum, Plaintiff directs the Court's attention to cases in which the sum of $1,000 was awarded. Considering the history of this case, the undersigned finds that sum to be appropriate.

In addition to nominal damages, Plaintiff is entitled to an award of reasonable attorney's fees as the prevailing party. *See* 42 U.S.C. § 1988; *Kidis v. Reid*, 976 F.3d 708, 721 (6th Cir. 2020) ("While relevant, the nominal nature of Kidis's recovery speaks only to the *amount* of attorney's fees permissible, not whether the party is eligible to recover attorney's fees."). Further briefing will be required on the issue of fees, but for reasons of judicial economy, that briefing should await the adoption or rejection of this Report and Recommendation by the presiding district judge.

### III. Conclusion and Recommendations

For the reasons stated, **IT IS RECOMMENDED THAT:**

1. Plaintiff's motion for summary judgment against Defendants (Doc. 43) be GRANTED in part, insofar as Plaintiff is entitled to an award of nominal

16

damages in the amount of $1,000.00 for the violation of his First Amendment rights by the City of Madeira for a two-week period in September 2019, when the unconstitutional *Sign Regulations* remained in effect and were enforced by the City against Plaintiff;

2. Except for Plaintiff's claim for nominal damages against the Defendant City, Plaintiff's motion for summary judgment should be DENIED;

    a. Plaintiff's motion for summary judgment as to Defendant David Schaeffer and two John Doe City employees should be denied, with those Defendants to be DISMISSED as superfluous and redundant;

    b. Plaintiff's motion for declaratory and injunctive relief should be DENIED AS MOOT;

3. Plaintiff should be awarded a reasonable sum of attorney's fees in an amount to be determined following an additional briefing schedule to be set by this Court.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| DOUG OPPENHEIMER,<br>a/k/a Phillip Douglas Oppenheimer,<br><br>  Plaintiff,<br><br>  v.<br><br>CITY OF MADEIRA, OHIO, et al.,<br><br>  Defendants. | Case No. 1:19-cv-770<br><br>Cole, J.<br>Bowman, M.J. |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).