**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

DOUG OPPENHEIMER,
a/k/a Phillip Douglas Oppenheimer,                    Case No. 1:19-cv-770

     Plaintiff,

                         Cole, J.
        v.                                  Bowman, M.J.

CITY OF MADEIRA, OHIO, et al.,

     Defendants.

**REPORT AND RECOMMENDATION**

Plaintiff Doug Oppenheimer initiated the above-captioned lawsuit in September 2019, alleging that the Defendants violated his civil rights under 42 U.S.C. §1983.   On August 23, 2021, the undersigned recommended that Plaintiff's motion for summary judgment be granted in part, and that Plaintiff be awarded "a reasonable sum of attorney's fees in an amount to be determined" after briefing.  (Doc. 51).  No objections were filed to that Report and Recommendation ("R&R), which was adopted by the Court on January 21, 2022.  (Doc. 52).  Now pending is Plaintiff's motion for fees and costs.  (Doc. 55).  For the reasons that follow, the undersigned recommends that Plaintiff's motion be GRANTED in part.

    **I.**    **Background**

Plaintiff, a self-described "governmental watchdog," (Doc. 1 at ¶ 43), is no stranger to litigation against the City of Madeira.  In fact, in its first appearance in this case, the City described him as a "second career and serial litigator vis-à-vis Madeira," stating that

1

the City had attempted to have Plaintiff declared a "vexatious litigator" in state court.[1] (Doc. 6 at 4, PageID 66). The undersigned takes judicial notice of this litigious history between the parties and their counsel as contextual reference,[2] to the extent that it may inform the tactics employed by both parties that have led to Plaintiff seeking nearly $100,000 in attorney fees and costs for a straightforward First Amendment claim for which Plaintiff won $1,000 in nominal damages.

In granting summary judgment to Plaintiff, the presiding district judge summarized the facts as follows:

> Oppenheimer sues the City and certain of its employees for violating his First Amendment rights after the City enforced a local ordinance ("Sign Regulations") restricting the quantity and size of temporary signs on residential property based on their content. (R&R, Doc. 51, #357). Specifically, Oppenheimer had placed two signs in his yard criticizing the City council and advocating for certain candidates in a forthcoming election. (*Id.* at #356). Because the Sign Regulations limited most signs to six square feet or less (except for temporary signs advertising upcoming "charitable, institutional, or civic events," which could be fifty square feet), the local police instructed Oppenheimer to take his signs down. (*Id.* at #357-58). Oppenheimer complied on September 9, 2019, (*id.* at #358), and initiated this lawsuit against various City employees and the City itself soon thereafter, seeking damages as well as declaratory and injunctive relief. (Compl., Doc. 1). Approximately two weeks later, the City Council repealed the Sign Regulations. (R&R, Doc. 51, #358). Oppenheimer then put his signs back up. (*Id.*).

(Doc. 52 at 2-3, PageID #373-374).

---

[1] The City's suit to declare Plaintiff a "vexatious litigator" failed. The Hamilton County Court of Common Pleas held that the City had not established that Plaintiff "habitually, persistently, and without reasonable grounds engaged in vexatious conduct." *City of Madeira v. Philip Douglas Oppenheimer*, Case No. A-1802415 (Oct. 28, 2020). The City appealed and lost again. *See Madeira v. Oppenheimer*, 2021 -Ohio-2958, 2021 WL 3826546 (Ohio App. 1 Dist., 2021). Plaintiff filed a new federal lawsuit in this Court, alleging that the City's suit to declare him a vexatious litigator was filed in retaliation for the exercise of his First Amendment rights. After surviving the City's motion to dismiss, that case remains pending. *See* 1:20-cv-371-MRB.

[2] While it is helpful to understand the long history of disagreement between both the parties and their counsel, their extensive history of prior litigation has no real bearing on *this* federal lawsuit beyond that limited contextual reference.

The pending motion for attorney's fees and costs represents the final step of this litigation.  An August 31, 2020 Memorandum Opinion and Order that denied Plaintiff's motion to strike Defendants' answer summarized the history of this case during the first year of litigation.  That history is repeated for the convenience of this Court.

> Plaintiff initiated this litigation by filing a complaint and motion for temporary restraining order and for preliminary injunctive relief in September 2019. Based upon the urgency of the issues presented, the undersigned scheduled a hearing for September 23, 2019. Hours before that hearing, recognizing the merits of Plaintiff's motion, the City filed a motion for a continuance. (Doc. 6). The City explained that it hoped to repeal the portions of Chapter 159 that the Plaintiff seeks to enjoin through "an emergency ordinance" to be voted upon during a session of City Council scheduled for September 23, 2019 at 7:30 p.m., just a few hours after the hearing. (*See id*. at 4). The City further represented that the City Manager had issued a moratorium on the enforcement of the controverted sign ordinances, in the form of a written communication dated September 23, 2019 to the Madeira Police Chief asking that official to "please refrain from enforcing any requirements contained in those specific Sections of Chapter 159, and instruct your officers likewise." (Doc. 6-1). The City subsequently filed evidence that it had in fact repealed the contested portions of its sign ordinances as anticipated, hours after the hearing before this Court was scheduled to be heard. (Doc. 8). Based on those developments, the court denied Plaintiff's motion for a TRO and for preliminary injunctive relief as moot, but allowed Plaintiff to proceed on his claim for monetary damages. (Docs. 9, 10).

> In lieu of filing an answer to Plaintiff's complaint, Defendant initially moved to dismiss "for lack of standing." (Doc. 13). However, Plaintiff then filed a first amended complaint, rendering moot Defendant's first motion to dismiss. On January 7, 2020, having calculated that the City had failed to timely respond to the amended complaint, Plaintiff filed an application seeking an entry of default. (Doc. 21). Hours later, the City filed a second motion to dismiss in lieu of filing an answer to the amended complaint. (Doc. 23). In addition, the City filed a separate motion seeking to strike the application for the entry of default. (Doc. 24).

> On April 6, 2020, the undersigned filed an Order denying Plaintiff's application for entry of default. (Doc. 30). In the Order, the Court explained to the City that defense counsel had miscalculated the relevant deadline for filing the City's response to the amended complaint, but that in "the interests of justice," the Court would construe the City's motion [to strike Plaintiff's application for entry of default] as seeking an extension of time to answer,

and would grant such construed motion. Therefore, despite being filed one day beyond the 14-day deadline, the Court permitted the City's motion to dismiss to be fully considered as if timely filed. (Doc. 30).

On the same date, the undersigned filed a separate [R&R] recommending the denial of the City's first motion to dismiss as moot, … and …the denial of the City's second motion[s] to dismiss on the merits.[3] (Doc. 31). Rejecting the City's arguments that Plaintiff no longer had standing based upon the repeal of the offending ordinance, the Court explained: "Because [Plaintiff] suffered a concrete harm prior to filing suit, his standing is firmly established and is unaltered by the City's subsequent actions." (Doc. 31 at 4).[4] The R&R also rejected the Defendants' mootness arguments, reasoning that the claim for nominal monetary damages remained and had not been rendered moot. (*Id*. at 5). Despite expressing doubt as to the continued viability of the separate claim for prospective relief, the undersigned recommended the denial of the motions to dismiss that claim because the Defendants had failed to carry their burden to show that the claim was entirely moot. Nevertheless, the denial of the motion to dismiss the claim for prospective relief was "without prejudice to present the same or similar arguments in a future dispositive motion if properly supported." (Doc. 31 at 9). On May 5, 2020, the presiding district judge adopted the R&R for the opinion of the Court:

> [T]he Court agrees with the Magistrate Judge that the case is not moot. Oppenheimer is making a claim for nominal damages relating to the alleged First Amendment violation - requiring him to remove a political sign from his yard. That damages claim for alleged past harm remains a live claim, notwithstanding any change to the City's ordinances. The Court further agrees that the Defendants failed to carry their burden, at least so far, in demonstrating that Oppenheimer's claim for prospective relief is moot.

(Doc. 32 at 2-3).

Once the Court denied the Defendants' motions to dismiss the amended complaint, the 14 day clock for filing an answer began ticking anew. *See* Rule 12(a)(4)(A), Fed. R. Civ. P. At this point, the record begins to resemble a scene from Groundhog Day. Fourteen days again passed without an answer. On the fifteenth day, Plaintiff once again filed an application for the

---

[3]On January 31, 2020, separately named Defendant David Schaefer filed his own motion to dismiss the amended complaint for lack of standing. Defendant Schaefer's motion mirrored the City's prior motion. (*Compare* Doc. 28 with Doc. 23). On February 20, 2020, Plaintiff filed a one page memorandum in opposition, appropriately "incorporate[ing] by reference the arguments presented" in his prior memorandum in opposition. (Doc. 29). Defendants filed no reply memoranda.

[4]The undersigned reasoned that Plaintiff had suffered an actual injury prior to filing suit, and was entitled to seek damages as compensation for the two-week period in which the City had enforced its sign ordinance. *See Uzuegbunam v. Preczewski*, 141 S.Ct. 792 (2021).

> entry of default. (Doc. 33). Hours later, Defendants responded with a technically-untimely Answer, filed without leave of Court. On May 22, 2020, Plaintiff filed a motion to strike Defendants' answer. (Doc. 35). Defendants filed a response in opposition to the motion to strike, to which Plaintiff filed a reply. (Docs. 36, 37).

(Doc. 38 at 3-6).

In its August 31, 2020 Order, this Court construed Plaintiff's motion to strike the City's untimely answer as akin to another application for entry of default. The Court then construed Defendants' opposing memorandum "as a motion to set aside a default, despite the fact that no default has yet been entered." (Doc. 38 at 8, PageID 288). The Court found that Defendants had established good cause to set aside any entry of default, and accepted the untimely answer. Because "there would be no value in entering a default and simultaneously setting it aside for good cause," the Court denied Plaintiff's application for default and motion to strike the answer. (Doc. 38 at 10, PageID 290). Observing the delay occasioned by the "procedural squabbles in this case as well as delays occasioned by the pandemic," the Court urged the parties to proceed as expeditiously as possible through any needed discovery to resolution of this case. (Doc. 38 at 13, PageID 293). The Court noted the "limited issues" remaining in dispute and pointedly directed the parties "to immediately explore the possibility of mediation or other alternative dispute resolution, including but not limited to a court-facilitated settlement conference." (*Id.*)

A court-facilitated mediation held in October 2020 failed to result in settlement, but the parties agreed to continue discussions until January 13, 2021, when they notified the Court that they were at an impasse. (*See* Doc. 41). Pursuant to the Calendar Order, discovery was set to conclude on May 28, 2021, with dispositive motions to be filed not later than June 25, 2021. Plaintiff did not delay. Plaintiff moved for summary judgment

on March 19, 2021, more than two months prior to the expiration of the discovery deadline.

Defendants sought an extension until April 26, 2021 in which to file their response to the motion for summary judgment. Then, in a "déjà vu all over again" moment,[5] Defendants missed that deadline, filing their responsive memorandum one day late on April 27, 2021. Defendants also failed to filed the requisite response to the Plaintiff's Proposed Undisputed Facts, necessitating a Court Order alerting them to that procedural defect. (Doc. 49). Defendants filed no response to the order, leaving Plaintiff's proposed Statement of Facts undisputed. Worse, Defendants' substantive memorandum in opposition to summary judgment repeated the same arguments previously rejected by this Court in its denial of Defendants' motions to dismiss, including challenges based on standing and mootness. Emphasizing that fact, Plaintiff filed only a short reply memorandum. (Doc. 50).

On August 23, 2021, the undersigned filed an R&R recommending: (1) that Plaintiff be granted summary judgment on his claim for nominal damages; (2) that damages in the amount of $1,000 be awarded to compensate Plaintiff for his injury; and (3) that Plaintiff be awarded reasonable attorney fees as a prevailing party under 28 U.S.C. § 1988. (Doc. 51). After Defendant failed to object, the R&R was adopted as the opinion of the Court on January 21, 2022. (Doc. 52). The Court set an expedited briefing schedule on the fee award "to ensure…prompt consideration." (Doc. 53 at 1, PageID 378). When the parties sought an extension to "fully discuss and consider the potential of resolving" the fee issue extrajudicially, (Doc. 54 at 1, PageID 379), the Court was happy to accommodate their

---

[5]Attributed to Yogi Berra.

request.  However, joint agreement once again proved out of reach.

On February 21, 2022, Plaintiff filed his motion for fees.  On the day the City's responsive memorandum was due, the City moved for an extension of time.  (Doc. 61).  After the Court granted the requested extension through March 25, the City (again) missed the deadline, filing its response one day late on March 26, 2022.[6]  Plaintiff timely filed his reply.

## II.    Analysis

Plaintiff seeks a total of $97,029.50 in fees,[7] (Doc. 55 at 2, PageID 384), along with costs and expenses totaling $486.88 under 42 U.S.C. § 1988.  The City does not contest Plaintiff's costs but calls Plaintiff's request "egregious" and "manifestly unjust," asserting that Plaintiff's "overzealous motion practice" and lack of civility unnecessarily increased fees.  (Doc. 64 at 1-2, and 6, PageID 578-79, 583).  The City asks this Court to "drastically limit the fee award" in part "[a]s a matter of public policy."  (*Id*. at 2, PageID 579).

This Court does not sit as a legislative body, and cannot ignore settled and controlling precedent.  Under controlling case law, Plaintiff is a prevailing party who is entitled to most of his claimed fees under § 1988.

### A.  Neither Litigation Tactics Nor Nominal Damages Support Reduction

#### 1.  The City's Litigation Tactics Prolonged this Case

The City's primary argument is that this case was "all-but-resolved" two weeks after Plaintiff's constitutional injury.  The City complains that there was no need for Plaintiff to continue to litigate after the City "practically and expeditiously" repealed the offending ordinance, thereby allowing Plaintiff to re-display the same yard signs. (*Id*.)  But, while the

---

[6]The City's response was re-filed on March 28, 2022 in order to comply with Local Rule 5.1(c).
[7]The referenced sum appears to reflect a minor calculation error based upon the records submitted.

City's *legislative* action was swift and effectively limited Plaintiff to nominal damages, the City's *litigation* strategy did nothing to swiftly end this litigation.

Perhaps the City thought that Plaintiff himself would dismiss after the City repealed the problematic sign ordinance.[8]  (*See*, *e.g.*, Doc. 6 at 5, PageID 67, suggesting in motion to continue TRO hearing that after the anticipated repeal, there would be "no need for Madeira taxpayers to foot the bill for additional litigation…").  Or perhaps the City thought that this Court would rule in its favor on standing and/or mootness arguments made first at the hearing held on Plaintiff's TRO motion and subsequently fleshed out in multiple motions to dismiss.  In those motions, the City clearly stated its intention "to dispose of this litigation as quickly as possible to minimize the expense to taxpayers and avoid wasting this Court's time with an abandoned ordinance." (*See* Doc. 13 at 8, PageID 94; Doc. 23 at 9, PageID 170; Doc. 28 at 9, PageID 225).  Given that intention, one might have expected the City to alter course after this Court rejected the mootness and standing arguments.  It did not. Instead, its actions contributed to prolonging the litigation.

As noted above, the City first erred in calculating the time in which it had to respond to Plaintiff's amended complaint.  After Plaintiff filed an application for entry of default, the City not only filed a tardy motion to dismiss, but filed a separate motion to strike Plaintiff's application for entry of default.  The Court explained the City's calculation error and liberally construed the City's motion to strike as a motion to extend time, deeming the City's motion to dismiss to be timely filed.  (*See* Doc. 30, discussing Rule 15(a)(3)).  But after the Court subsequently denied the motion to dismiss on the merits as contrary to controlling case law, the City *again* missed its deadline to answer by a day.  Perceiving

---

[8]The parties' extensive litigation history might have dissuaded the City from this notion.

the procedural error, Plaintiff wasted no time in filing a second application for entry of default as well as a motion to strike the untimely answer.[9]  (Docs. 33-35).

On August 31, 2020, the Court permitted the City's tardy answer and denied the entry of default (along with the motion to strike the City's answer) after finding that the City's delay was not willful and that Plaintiff would not be prejudiced.  In rejecting the Plaintiff's primary argument - that default should be entered because the City lacked *any* meritorious defense - the Court was circumspect.  The Court reasoned that case law surrounding the entry of default states that an answer need not reflect a defense "likely to succeed," so long as there is a "hint of a suggestion" that the defense is meritorious, a very low bar that the City's answer satisfied.  (Doc. 38).  Ironically, the deadlines missed by the City might have brought about a quicker end to this litigation had the Court granted relief under Rule 55.  But the City strongly opposed that end, arguing that this case should be decided "on the merits and not on technicalities."  (Doc. 36 at 6, PageID 261).  And so - despite this Court's best efforts to encourage the parties to the settlement table -  the litigation continued another year.

In a bit of revisionist history, the City now claims that it "never disputed the unconstitutionality of repealed provisions" and that Plaintiff's "post-September 23rd amended pleading[] and motion practice maneuvering was unnecessary and unwarranted." (Doc. 64 at 10, PageID 587). The City asserts that it "*effectively* conceded the merit of Plaintiff's constitutional concerns straight out of the gate."  (Doc. 64 at 2, PageID 579) (emphasis added).  But Plaintiff's continued litigation was "necessary" because the City refused to <u>explicitly</u> admit defeat.  In fact, the City denied that the

---

[9]Plaintiff's second application for default, so quickly followed by a motion to strike, stretched the boundaries of zealous advocacy.  Being a good advocate does not mean filing every motion that is legally permissible.

ordinance was unconstitutional or Plaintiff was prevented from posting his political signs for 2 weeks, such that he was entitled to recover "at a minimum, nominal damages." (*See* Doc. 15 at 19, ¶¶ 90-93, Second Cause of Action for Violation of First and Fourteenth Amendments to the U.S. Constitution).  In addition to denying the relevant allegations, the City's Answer asserted the following defenses: (1) mootness; (2) the doctrines of laches, waiver, estoppel, and the doctrine of unclean hands and Plaintiff's own bad faith; (3) sovereign immunity; (4) the statute of limitations or statute of repose; (5) that Plaintiff suffered no harm and that if he did, any harm was *not* proximately caused by Defendants but by Plaintiff's own actions; (6) that Defendants themselves were entitled to an award of attorneys' fees and costs because Plaintiff's complaint "is unreasonable frivolous, vexatious, without merit and/or has not been brought or asserted in good faith"; and (7) the doctrine of privilege, qualified privilege and/or absolute privilege. Additionally, Defendants' answer "reserve[d] the right to assert additional defenses upon continuing investigation." (Doc. 34 at 4, PageID 250).  And when it enacted its new sign ordinance, the City stated only that case law "may impact" the "underlying constitutionality and enforceability of certain provisions of" the prior sign ordinance.  (Doc. No. 8-1, PageID 74).

Whatever the merits of the City's litigation strategy, it did nothing to reduce mounting legal fees.  Even if justified in moving to dismiss the amended complaint, the City still could have taken action to dramatically reduce legal fees by filing an offer of judgment under Rule 68.[10]  It did not.  *See Marek v. Chesny*, 105 S.Ct. 3012, 3014, 473 U.S. 1, 5 (1985) (holding that the term "costs" as used in Rule 68 includes attorney's fees

---

[10]As Plaintiff concedes, counsel "would not have been entitled to recovery of attorney fees for work thereafter" if the City had filed under Rule 68  (Doc. 65 at 5-6 n. 1, PageID 640-641).

awardable under 42 U.S.C. § 1988).  Instead, the City repeatedly refused to acknowledge the legal validity of Plaintiff's damages claim, raising the same rejected argument of mootness in opposition to summary judgment,[11] despite conceding all relevant facts as undisputed.  (*See* Doc. 51 at 8-11, PageID 361-364, rejecting the City's repetitious arguments and noting that "[t]his Court has now repeatedly explained that…the case is not moot.").  Thus, while Plaintiff's early motion practice[12] added some fuel to the fire, the City's litigation strategy was the primary driver of legal fees expended after repeal of the unconstitutional ordinance.

### 2. Recovery of Nominal Damages Does Not Require a Reduction in Fees Under *Farrar v. Hobby*

In addition to criticizing Plaintiff's litigation tactics, the City asks this Court to consider a "proportionate" award "in light of the $1,000 damages award."  (Doc. 64 at 3, PageID 580).  But in *City of Riverson v. Rivera*, 477 U.S. 561, 574 (1996), the Supreme Court flatly rejected "the proposition that fee awards under § 1988 should *necessarily* be proportionate to the amount of damages a civil rights plaintiff actually recovers." (emphasis added).  Advocating for a proportional approach in this case, the City instead cites to *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933 (1983) and *Farrar v. Hobby*, 506 U.S. 103 (1992).  In *Hensley,*  the Supreme Court set forth a list of factors that can be considered in determining an appropriate fee award, but stressed that "the most critical factor is the degree of success obtained." *Id.*, 461 U.S. at 436.  In *Farrar v. Hobby*, the

---

[11]To be clear, there was nothing inappropriate about the City's renewed mootness challenge to Plaintiff's separate claim for prospective relief.  This Court had all but invited the renewal of that challenge in its denial of the City's motion to dismiss, and the City ultimately prevailed on that claim.

[12]It was the City (not Plaintiff) who filed a motion connected with Plaintiff's first application for default. After this Court denied Plaintiff's second application for default and related motion to strike, Plaintiff did not again challenge the City's missed deadlines.

Supreme Court applied that principle when it affirmed the denial of fees to a prevailing party who was awarded only $1 in damages after seeking $17 million.  The enormous discrepancy between "the amount of damages awarded as compared to the amount sought" rendered the plaintiff's "technical" victory a hollow one, and supported the denial of fees. *Farrar,* 506 U.S. at 114 (internal quotation marks omitted).

In contrast, there is no daylight between the monetary judgment that Plaintiff was actually awarded in this case ($1,000) and the award he sought to recover ("at a minimum, nominal damages") for the City's two-week violation of his Free Speech rights.  The fact that Plaintiff got what he asked for distinguishes this case from *Farrar* and supports an award on the basis that Plaintiff achieved a significant "degree of success" under *Hensley*. Still, it is not wrong to consider whether a reduction might be appropriate based *solely* upon the nominal nature of the monetary recovery - even when those damages represent total "victory" for a plaintiff who sought no more in monetary compensation.  In accord with the discussion of legislative history in *City of Riverson*, 477 U.S. at 580, and as reiterated by *Farrar*, "[f]ee awards under § 1988 were never intended to produce windfalls to attorneys." *Id.*, 506 U.S. at 115 (internal quotation marks omitted).

In an unpublished decision, the Sixth Circuit considered a similar question in the context of a case in which the plaintiff had sought declaratory and injunctive relief against a school district, not monetary damages.  *See Glowacki v. Howell Public School Dist.*, 566 Fed. Appx. 451, 453 (6th Cir. 2014).  On summary judgment, the trial court awarded $1 in nominal damages on a First Amendment claim against a single teacher, while granting summary judgment to the defendant school district on the bulk of plaintiff's "legally and factually frivolous" declaratory and injunctive relief claims.  The trial court then

denied fees, reasoning that the plaintiff had won nothing more than a "technical" victory. The Sixth Circuit affirmed, despite noting that *Farrar* offers "little guidance on what makes a judgment 'technical' other than to suggest that courts should compare the amount of damages sought to the amount awarded." *Id.*, 566 Fed. Appx. at 453.  Even though there was no discrepancy between the damages sought and the amount awarded in *Glowacki*, the appellate court still applied *Farrar* because the plaintiff lost most of his case. "[N]othing in *Farrar* confines its technical-judgment analysis to unsuccessful claims for monetary damages."  *Id.*, 566 Fed. Appx. at 454-455.

Here, unlike in *Glowacki*, Mr. Oppenheimer brought only two claims, neither frivolous.  He won decisively on his claim for nominal damages.  While Plaintiff lost after a hearing on preliminary injunctive relief, that initial TRO and preliminary injunctive relief claim was denied not because it was meritless (as in *Glowacki*) but because the City's quick legislative action appeared to render the issue moot.  In his amended complaint, Plaintiff realleged a new claim for injunctive relief based upon new facts that allegedly demonstrated that the issue was not entirely moot.  After surviving a motion to dismiss, he ultimately lost that claim on summary judgment.

Losing one of two non-frivolous claims and being awarded only nominal damages does not mean that Plaintiff should be denied all fees.  *See*, *e.g.*, *Kidis v. Reid*, 976 F.3d 708, 720 (6th Cir. 2020) (affirming award of attorney's fees and costs in excess of $143,000 despite jury's award of only $1 in nominal damages and the elimination of numerous claims on summary judgment prior to trial).  But a reduction of fees can be appropriate to reflect time spent on discrete unsuccessful claims.  Here, the undersigned concludes that a 20% global reduction is reasonable to reflect that Plaintiff prevailed on

only one of his two claims. The unsuccessful claim for prospective relief involved several distinct facts (such as the background of the legislative action and whether the website continued to display the old ordinance) and a clearly distinct legal theory.

The undersigned does not recommend a larger reduction because Plaintiff did not actively litigate the prospective relief claim after this Court's ruling on the City's motion to dismiss.[13] In fact, because Plaintiff's motion for summary judgment focused exclusively on the claim for nominal damages, the undersigned assumed "that Plaintiff had abandoned his requests for declaratory and injunctive relief" until Plaintiff addressed the second claim in his reply. (Doc. 51 at 12, PageID 365).

The recommended reduction for the unsuccessful claim does not entirely answer the question of whether Plaintiff's successful recovery of only nominal damages in and of itself warrants a further reduction of fees. *See Farrar*, 506 U.S. at 114. To answer that question, the undersigned considers two factors suggested by Justice O'Connor in her concurrence in *Farrar* and adopted by multiple other circuits.

> Justice O'Connor's concurrence…articulates two additional factors. The first considers "the significance of the legal issue on which the plaintiff claims to have prevailed." *Farrar,* 506 U.S. at 121, 113 S.Ct. 566 (O'Connor, J., concurring). The second asks whether the litigation "accomplished some public goal other than occupying the time and energy of counsel, court, and client." *Id.* at 121–22, 113 S.Ct. 566 (O'Connor, J., concurring).

*Glowacki*, at 451, 453-54; *see also id*. at n. 1 (discussing adoption by other circuits).

In *Glowacki*, application of the two factors supported the district court's denial of all fees, but the court declined to formally adopt the test because the majority's "degree of success" formula yielded the same result. Two months later, another panel questioned

---

[13]After this Court expressed doubt as to the continued viability of the prospective relief claim and stated that the City remained free to re-file a new dispositive motion on that claim, the City chose not to do so. Instead, the Court simply addressed the claim in its opposition to Plaintiff's motion for summary judgment.

use of the O'Connor factors, but also found that the factors did not apply on the facts presented. *See Hescott v. City of Saginaw*, 757 F.3d 518, 525 (6th Cir. July 2014); *accord McClusky v. Lake Hosp. Systems, Inc.*, 2015 WL 4629251, at *2 (N.D. Ohio Aug. 3, 2015) (holding that fees should be denied whether or not O'Connor factors applied). Since *Glowacki*, a number of courts have applied the O'Connor factors. *See Breaud v. Breaud*, 2018 WL 4680325, at *7 (M.D. Tenn. Sept. 28, 2018) (collecting cases that have applied the O'Connor test to determine the reasonableness of a fee award).

To the extent that the O'Connor factors are relevant,[14] they support a reduced award rather than no award at all. The issue successfully litigated represented one of two *primary* claims– that Plaintiff suffered an injury and was entitled to damages because he was prevented from displaying his political signs for two weeks. *Contrast Glowacki v. Howell Public School Dist.*, 566 Fed. Appx. at 455 (reasoning that the plaintiff succeeded only on a limited First Amendment claim while losing most of his *primary* claims against the school district).

It is admittedly more difficult to say that this case furthered the public good after the City voluntarily repealed its ordinance. If Plaintiff had sought *only* prospective relief – the type of relief that most clearly would have benefitted the public if available - his fee petition would be denied in its entirety based upon the City's quick legislative action. "A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dept. of Health & Human Res.*, 532 U.S. 598, 605, 121 S.Ct. 1835 (2001) (rejecting the "catalyst theory" as

---

[14]The undersigned concludes that *Farrar* supports the award of a lodestar fee reduced by 20% for the unsuccessful claim, because Plaintiff won more than a "technical" victory.

supporting § 1988 fee award); *Kiser v. Kamdar*, 752 Fed. Appx. 272, 276 (6th Cir. 2018). Given that fact, should Plaintiff's inclusion of a request for nominal monetary damages justify a significant fee award? While future courts might reach a different conclusion as controlling case law becomes more settled, the undersigned answers affirmatively.

Despite the quick repeal of the ordinance after suit was filed, the City refused to acknowledge that the prior ordinance had been unconstitutional under existing Supreme Court authority, or that it caused Plaintiff any injury at all. Initially, the City erroneously suggested that the publication of a new Sixth Circuit case just two days before Madeira directed Plaintiff to take down his signs altered the constitutional landscape.[15] (*See, e.g.*, Doc. 6, citing *Thomas v. Bright*, 937 F.3d 721 (6th Cir. September 11, 2019), abrogated by *City of Austin, Texas v. Reagan National Advertising of Austin, LLC*, 142 S.Ct. 1464 (April 21, 2022)).[16] And only when faced with Plaintiff's motion for summary judgment did the City finally provide the requisite proof that it would not re-enact a similar provision. (*See* Doc. 51 at 12-15, PageID 365-68 (discussing proof offered on summary judgment); Doc. 48 at 2-3, PageID 331-332). In terms of the "public good" analysis, the undersigned notes that the controlling Supreme Court authority dated only to 2015. *Contrast Glowacki*, 566 Fed. Appx. at 455 (holding that case did not further the public good when it sought to apply Supreme Court precedent that had been well-established for nearly a century). And the interpretation of *Reed* was still evolving. *See City of Austin*, *supra*. Thus, even though

---

[15]In reality, the City's sign regulations had been unconstitutional for four years under *Reed v .Town of Gilbert*, 135 S. Ct. 2218 (2015) (holding that similar content-based sign regulations were subject to strict scrutiny and presumptively unconstitutional).

[16]Because *City of Austin* only abrogated the Sixth Circuit's 2019 expansion of *Reed*, *City of Austin* does not alter this Court's conclusion on summary judgment that the City of Madeira's content-based sign codes were unconstitutional under *Reed*'s original holding.

the amount of "public good" might fairly be questioned, the O'Connor factors on the whole support a reduced fee rather than no fee.

### B.  The Lodestar Approach

Having determined that Plaintiff is entitled to at least 80% of his fees based upon his successful litigation of his nominal damages claim, the undersigned turns to the application of the lodestar approach.  "[C]ases interpreting §1988 establish a strong presumption that the lodestar figure – the product of reasonable hours times a reasonable rate – represents a reasonable fee." *Murphy v. Smith*, 138 S. Ct. 783, 789 (2018) (internal quotation marks and citation omitted).

### 1.  The Hours Expended

In opposition to the submissions of Plaintiff's counsel, the City offers an expert attorney who opines in her Declaration that  counsel took "little" risk given their successful representation of other plaintiffs in two prior sign code cases for which fees were awarded. The City's expert asserts that Plaintiff's counsel "billed for work product that was copied from existing templates." (Doc. 64-1 at 8, ¶26, PageID 599). However, the undersigned declines to reduce the number of hours spent on drafting the complaint and amended complaint after reviewing the detailed allegations relating specifically to Mr. Oppenheimer and the City of Madeira.[17]

Likewise, apart from the global 20% reduction for the unsuccessful claim, the undersigned declines to reduce time spent on the preparation and filing of Plaintiff's motion for a temporary restraining order and preliminary injunction.  The main reason that relief was denied as moot after the hearing was the City's *post*-hearing legislative action.

---

[17]The expert's Declaration asks this Court to compare the verified complaint in one of those cases with the complaint in this case, but fails to attach the referenced exhibits.

The undersigned also declines to apply any further discount to the drafting or prosecution of the amended complaint. The amended complaint was necessary to clarify that Plaintiff still sought nominal monetary damages for the two-week period in which he was prevented from displaying his political yard signs, prior to the repeal of the offending sign code.

The City also seeks a reduction based upon Plaintiff's inclusion of individual Defendants in his amended complaint that the Court ultimately dismissed as "redundant" on summary judgment. But unlike the claim for prospective relief, the "redundant" claims arose entirely from the same facts and legal theories and did not add to fees or prolong this litigation in any appreciable way. In fact, neither party briefed the individual defendants' liability at all on summary judgment; the Court's dismissal of the redundant claims was *sua sponte*.

The City's expert briefly points to the lack of a contingency agreement in this case as a basis for a downward adjustment, but Sixth Circuit authority appears to the contrary. *See generally*, *Hamlin v. Charter Tp. of Flint*, 165 F.3d 426, 438 (6th Cir.1999) (holding that while an hourly rate may be adjusted upward to account for additional risk of non-payment inherent in a contingency fee arrangement, it is improper to adjust downward). Last, the undersigned rejects the City's expert view that Plaintiff's counsel should receive a lower fee because he is a solo practitioner who performed work that could have been performed by a paralegal in a larger law office that employs more staff. (Doc. 64-1 at 7 ¶22 , PageID 598). The undersigned agrees with other courts that have rejected such generalized arguments that do not refer to specific time entries. *See Crouch v. Rifle Coal Co., LLC*, 2010 WL 2961181, at *3 (E.D.Ky. July 26, 2010) (rejecting argument that solo

18

practitioner should be compensated less for "paralegal work"); *Comm. for Equity v. Michigan H.S. Athletic Ass'n*, 2008 WL 906031, at *13 (W.D. Mich. March 31, 2008) (rejecting argument that solo practitioner should not be compensated for work that would have been more appropriate for lower-level associates or paralegals); *Isabel v. City of Memphis*, 404 F.3d 404, 416 (6th Cir. 2005) (rejecting argument that solo practitioner's rate should be adjusted downward based on tasks that "could have been performed at lower hourly rate" by non-existent paralegals or support staff.)

### 2.  Plaintiff's Hourly Rates Should be Reduced

Although the City does not contest the rates of the Finney firm's paralegals or an associate attorney, the City complains that the $610 hourly rates of Mr. Finney and Mr. Hartman are too high.  I agree.

Mr. Hartman states in a supporting Declaration filed on February 21, 2022 that the $610 rate reflects what he "currently" charges.  (Doc. 56).  Although he performs most work on a contingent basis, he states that he "just completed" representation of another client in *Alabama* at that hourly rate.  (*Id.* at 7, PageID 410).  However, Plaintiff does not state his hourly rate in this jurisdiction during the years that most work was performed. He references 2018 decisions in which he was awarded $440 per hour and $480 per hour, but his hourly fee was not contested in either of those cases.  In addition, Mr. Hartman has filed a supporting Declaration from another attorney who opines that a reasonable hourly fee would be $517.08 per hour.  (Doc. 58 at ¶¶ 7-10).  The undersigned finds the rate of $517.08 per hour to be a reasonable hourly rate for Mr. Hartman for the reasons stated by Plaintiff's expert, as well as the fact that the straightforward constitutional claim presented in this case was not novel and did not require any unusual

depth of skill and training. (*Accord* Doc. 58 at 3, ¶ 7, PageID 486, noting "relatively straightforward" nature of claim that was clearly established by "binding precedent.").

The City advocates for a rate of $517.08 to apply to Mr. Finney based upon the same expert's Declaration,[18] but encourages this Court to award only $450.00 per hour to Mr. Hartman based upon his fewer years of experience. The Court does not agree that the two attorneys should be awarded different hourly rates. Both are senior attorneys who have practiced more than 25 years. Mr. Hartman performed most of the work in this case and – as a solo practitioner -  took more risk by foregoing other work.  At the same time, the undersigned agrees that the hourly rate of $517.08 is a "reasonable" rate for Mr. Finney.  Mr. Finney's own Declaration suggests an hourly rate of $575 per hour. However, like Mr. Hartman, Mr. Finney refers to rates that he has been awarded in other cases that reflect a lower range of $400 to $450 per hour.

### C.  Plaintiff is Not Entitled to Fees Under 28 U.S.C. § 1927

While Plaintiff devotes most of his motion to recovery under 42 U.S.C. § 1988, he spends the last three pages addressing an alternate theory of recovery under 28 U.S.C. § 1927, which allows an award of fees and costs against any attorney who "multiplies the proceedings in any case unreasonably and vexatiously."  Because Plaintiff is entitled to fees under § 1988, there is no need to reach this "alternative basis for an award."  (Doc. 55 at 17, PageID 399).  Suffice it to say, however, that the City's litigation conduct did not approach the standard set forth in § 1927.

---

[18]In suggesting that Plaintiff's expert supports this rate for Mr. Finney, the City's expert has misread Plaintiff's supporting Declaration.  Plaintiff's expert's Declaration refers to Mr. Hartman, not Mr. Finney. Nevertheless, the same factors related by that expert apply to Mr. Finney.

**III.    Conclusion and Recommendations**

In sum, the undersigned recommends that Plaintiff be awarded reasonable fees and costs under 42 U.S.C. § 1988 based upon the following lodestar rates:  $517.08 for Messrs. Finney (11.7 hours) and Hartman (143.9 hours), $305 for Mr. Shrive (6.9 hours), and $170 for paralegal work (2.8 hours).  Although a full fee award would total $83,038.15, the undersigned recommends the application of a global reduction of 20% to reflect the lack of success on Plaintiff's claims for prospective relief.   No further reduction is recommended despite the fact that Plaintiff continued pursuit of litigation after the City repealed the unconstitutional ordinance and recovered only nominal damages.

For the reasons stated, **IT IS RECOMMENDED THAT** Plaintiff's motion for attorney's fees under 42 U.S.C. § 1988 (Doc. 55) be GRANTED IN PART, with Plaintiff to be awarded the sum of $66,430.52 in fees, plus $486.88 in costs.

_s/Stephanie K. Bowman_____
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

DOUG OPPENHEIMER,
a/k/a Phillip Douglas Oppenheimer,                          Case No. 1:19-cv-770

      Plaintiff,

                                        Cole, J.
      v.                                                     Bowman, M.J.

CITY OF MADEIRA, OHIO, et al.,

      Defendants.

**NOTICE**

      Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).