# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

DOUG OPPENHEIMER,

    Plaintiff,

v.

CITY OF MADEIRA, OHIO, et al.,

    Defendants.

Case No. 1:19-cv-770
JUDGE DOUGLAS R. COLE
Magistrate Judge Bowman

## OPINION AND ORDER

This cause comes before the Court on the Magistrate Judge's July 15, 2022, Report and Recommendation ("R&R," Doc. 66). There, the Magistrate Judge recommends that the Court grant in part Plaintiff Doug Oppenheimer's Motion for Fees and Costs (Doc. 55), and award Oppenheimer $66,430.52 in fees and $486.88 in costs for his successful prosecution of his First Amendment claim against the City's sign ordinances. (R&R, Doc. 66, #678).

For the reasons stated more fully below, the Court **ADOPTS** the R&R (Doc. 66) **IN PART**. More specifically, having reviewed the docket, the Court concludes that both parties to this lawsuit have unnecessarily increased the costs of litigation. For its part, the City continued to press arguments that the Court specifically rejected in earlier Orders, requiring Oppenheimer to incur expenses responding to those already rejected arguments. But Oppenheimer likewise has incurred (and caused) unnecessary costs—for example, on two occasions seeking defaults the very day after a responsive pleading was due, apparently without even bothering to confer with opposing counsel as to the reason for the filing oversight. Accordingly, having

reviewed the City's objections, the Court concludes that it will **GRANT** Oppenheimer's Motion for Fees and Costs (Doc. 55) **IN PART**, revising the fee award downward to $60,474.52, and awarding $486.88 in costs (to which no party objected).

## BACKGROUND

### A. The Underlying Case.

The City of Madeira had a sign ordinance restricting the quantity and size of temporary signs on residential property based on content. (R&R, Doc. 66, #659). City officials sought to enforce the regulation against Oppenheimer, demanding that he remove two signs in his yard criticizing the City council and advocating for certain candidates in a then-upcoming election. (*Id.*). Oppenheimer complied, but then sued, asserting a First Amendment violation. (*Id.*). He sought both injunctive relief (preventing future enforcement of the ordinance) and monetary damages (for the City's conduct in demanding he remove his signs). (*Id.*). Oppenheimer also sought a temporary restraining order (TRO). (*Id.* at #660). Before the Court could rule on that request, though, the City repealed the sign regulations. (*Id.*). All told, Oppenheimer's signs were down for about two weeks. (*Id.* at #659).

That was not the end of the matter, though. Oppenheimer continued his suit seeking money damages for the harm he allegedly incurred in complying with the City's unconstitutional demand (i.e., in removing the signs). (*Id.* at #660). And the City, notwithstanding having repealed the ordinances, sought to defend the lawsuit. In particular, the City moved to dismiss Oppenheimer's Complaint, arguing that he lacked standing. (Doc. 13, #87).

2

That led to a flurry of moves and countermoves, including an Amended Complaint (Doc. 15), an Application for Default (Doc. 21), a Motion to Strike the Application for Default (Doc. 24), and a renewed Motion to Dismiss for Lack of Standing (filed in response to the Amended Complaint, but one day late, which is what gave rise to the Application for Default) (Doc. 23). The Magistrate Judge then issued an R&R recommending the Court deny the renewed Motion to Dismiss, as Oppenheimer clearly had standing at the time he filed suit (which is the relevant time at which to measure standing). (Doc. 31, #235). Moreover, to the extent the City instead meant to argue mootness, the R&R found that Oppenheimer's claim for money damages for the City's past conduct prevented the case from becoming moot, notwithstanding the City's repeal of the offending ordinances. (*Id.* at #235–36). No party objected to that R&R, and this Court adopted it. (Doc. 32).

That set off another flurry of filings, including another Application for Default (Doc. 33), an untimely (again by one day) answer to the Amended Complaint (Doc. 34), and a Motion to Strike that untimely answer (Doc. 35). The Magistrate Judge denied the Application for Default and the Motion to Strike on August 31, 2020. (Doc. 38). Six months later, Oppenheimer moved for summary judgment. (Doc. 43). The City opposed, again largely relying on the already-rejected argument that the City's repeal of the offending ordinances left Oppenheimer with no case. (Doc. 48).

The Magistrate Judge issued an R&R recommending that the Court grant Oppenheimer's Motion for Summary Judgment, and award nominal damages in the

3

amount of $1,000, as well as attorneys' fees and costs. (Doc. 51). Once again, no party objected, and the Court adopted that R&R. (Doc. 52).

That left the matter of quantifying the attorneys' fees and costs, which is what leads to the instant dispute. On February 21, 2022, Oppenheimer moved for an award of $97,029.50 in attorneys' fees and costs in the amount of $486.88. (Doc. 55, #402). The City opposed the request as to fees (but not costs), claiming that a reasonable attorneys' fee in this case would be in the range of $21,000–$37,000. (Doc. 64-1, #600).

B.  **The Report and Recommendation at Issue.**

On July 15, 2022, the Magistrate Judge issued the R&R at issue here. (Doc. 66). In that R&R, the Magistrate Judge recommends that the Court award attorneys' fees of $66,430.52. (*Id.* at #678). The roughly $30,000 reduction from what Oppenheimer requests is the result of two factors working in tandem. First, the Magistrate Judge suggests that the appropriate hourly rate for Oppenheimer's two lead attorneys is $517.08/hour, rather than the $610/hour that they requested. (*Id.* at #676, 678). Readjusting the lodestar to reflect that lower hourly rate, the resulting attorneys' fee award would be $83,038.15. (*Id.* at #678). Second, with the lodestar thus adjusted, the R&R further recommends a 20% "global reduction" to account for the fact that Oppenheimer prevailed on only one of his claims (for damages) and not the other (for injunctive relief). (*Id.*). Based on that global reduction, the R&R recommends an award of $66,430.52 (i.e., $83,038.15 x 80%). (*Id.*). As the City did not object to Oppenheimer's request for $486.88 in costs, the R&R further recommends awarding that amount. (*Id.* at #664, 678).

4

**C.     The City's Objections.**

Unlike previous the R&Rs in this case, the City filed Objections to this most recent R&R. (Doc. 67). In particular, the City advances two arguments, both of which are aimed solely at the Magistrate Judge's determination that a global reduction of "only" 20% is appropriate here.

First, the City claims that the Magistrate Judge's basis for limiting the global reduction to only 20% was her finding that Oppenheimer did not actively litigate the injunctive relief issue (i.e., the claim on which he lost) after the Court's ruling on the Motion to Dismiss. According to the City, this is not true, and thus cannot serve as a basis for limiting the Magistrate Judge's global reduction. (*Id.* at #683–84).

Second, the City claims that the Magistrate Judge got other key facts wrong, or misapplied them, in arriving at that global reduction. For example, the City notes that the R&R finds that Oppenheimer's own "early motion practice added fuel to the fire," and yet still recommends awarding 80% of the lodestar amount. (*Id.* at #684–85). Moreover, the City claims that the R&R mischaracterizes when the City made clear that it would not reenact the allegedly unconstitutional provisions (thus putting a nail in the coffin of the request for injunctive relief). (*Id.* at #685). Finally, the City claims that the R&R erred in stating that the City failed to attach exhibits to its expert declaration to support the City's claim that the Complaint here was largely cut and paste from a complaint in another action. (*Id.*).

Based on these two objections, the City asks the Court to reject the R&R, and "award attorney fees in an amount reasonably proportionate to the Court's nominal damages award." (*Id.* at #686).

5

## LEGAL STANDARD

Under Fed. R. Civ. P. 72(b)(3), district courts review an R&R de novo after a party files a timely objection. This review, however, applies only to "any portion to which a proper objection was made." *Richards v. Colvin*, No. 2:12-cv-748, 2013 WL 5487045, at *1 (S.D. Ohio Sept. 30, 2013). In response to such an objection, "[t]he district court 'may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.'" *Id.* (quoting Fed. R. Civ. P. 72(b)(3)). By contrast, if a party makes only a general objection, that "has the same effect[] as would a failure to object." *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991); *Boyd v. United States*, No. 1:16-cv-802, 2017 WL 680634, at *1 (S.D. Ohio Feb. 21, 2017). That is, a litigant must identify each issue in the R&R to which he or she objects with sufficient clarity that the Court can identify it, or else that issue is deemed waived. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) ("The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious.").

As to any unobjected portion of the R&R, by contrast, the advisory committee notes to Federal Rule of Civil Procedure 72(b) suggest that the Court still must "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Redmon v. Noel*, No. 1:21-CV-445, 2021 WL 4771259, at *1 (S.D. Ohio Oct. 13, 2021) (citing cases).

6

## LAW AND ANALYSIS

The Court begins its analysis by observing that, in the City's Objections, the City does not expressly object either to the hourly rate that the Magistrate Judge found was appropriate here, or to the hours that the attorneys expended in this action. To be sure, the Objections purport to "incorporate[] by reference [the] arguments [the City] advanced in its Memorandum in Opposition to Plaintiff's Motion for an Award of Attorney Fees," (Doc. 67, #680), where the City did attack both the hourly rate and the hours expended. (Doc. 62, #530–31). But such incorporation by reference does not qualify as a "specific objection" to the R&R. *See, e.g., Greiner v. Cnty. of Oceana*, No. 1:19-CV-936, 2021 WL 4316769, at *2 (W.D. Mich. Sept. 23, 2021) ("To the extent Plaintiff also attempts to 'incorporate by reference' his briefing to the Magistrate Judge, such attempt is misplaced. '[A]n objection that does nothing more than state a disagreement with the magistrate's suggested resolution, or simply summarizes what has been presented before, is not an "objection" as that term is used in the context of Federal Rule of Civil Procedure 72.'" (quoting *Brown v. City of Grand Rapids*, No. 16-2433, 2017 WL 4712064, at *2 (6th Cir. June 16, 2017))); *Hunter v. Hamilton Cnty. Ct. of Common Pleas*, No. 1:16-cv-561, 2019 WL 2281542, at *11 (S.D. Ohio May 29, 2019) ("Such incorporation by reference, however, fails to meet the requirement of '*specific* written objections' to the Report and Recommendation." (emphasis original)).

Given the lack of a specific objection on these issues, the Court reviews the Magistrate Judge's recommendation for clear error. The Court finds none. The hourly rate that the Magistrate Judge recommends is one that the City's own expert opined

was reasonable as to one of the plaintiff's attorneys. (Geoppinger McCoy Decl., Doc. 64-1, #597; *see also* Durst Decl., Doc. 58, #486). And the Court finds that it was not "clear error" to apply that rate for both, as each is a seasoned litigator with over 25 years of experience. (R&R, Doc. 66, #677). Likewise, the Court concludes that the Magistrate Judge did not clearly err in determining that the hours expended here were reasonable (although, as described below, the Court ultimately concludes that a further reduction is warranted due to the nature of some of the tasks on which the attorneys spent those hours). Accordingly, given the City's failure to object to the lodestar amount, the Court concludes that this lodestar serves as an appropriate starting point here.

That leaves the question of the Magistrate Judge's recommendation for a "global reduction" of 20%. The City says it should be more, raising two arguments in that regard.[1] First, as noted, the City claims that the Magistrate Judge erred in concluding that Oppenheimer discontinued "actively litigating" his claim for prospective relief after the Court ruled on the Motion to Dismiss. (Obj., Doc. 67, #683–84). The Court is not convinced. To be sure, the City is able to cite two specific instances in which Oppenheimer re-raised his argument on that issue, but they were passing references in his *reply* brief on summary judgment. (*Id.* at #684). And the Magistrate Judge did not ignore those statements in concluding that Oppenheimer had discontinued his litigation efforts, as the City seems to suggest. Rather, she

---

[1] For his part, Oppenheimer claims it should be less, but he did not object to the R&R. Rather, he raises that argument in his *opposition* to the City's objections. (Doc. 69, #696). That doesn't work. If a party seeks relief from an R&R, that party must timely file objections. *See* Fed. R. Civ. P. 73(b). Oppenheimer did not do so.

8

explained that Oppenheimer raised the issue on reply solely to respond to an argument that the City itself had made in its opposition to summary judgment. (R&R, Doc. 66, #671). Thus, this Court concludes that the City errs in claiming that the Magistrate Judge misunderstood the record on that issue.

Most of the other alleged mischaracterizations or misunderstandings do not provide any basis for relief either. For example, the Court agrees with the City that the Magistrate Judge erred in concluding that the City's expert neglected to attach the exhibits to which the expert referred in her report. But, having reviewed those exhibits, the Court agrees with the Magistrate Judge that the significant new case-specific material in the Complaint here supports a finding that this action was not simply a "cut and paste" job from the previous action. (*Id.* at #674). To be sure, there are aspects of the Complaint here that share similarity to the complaint in the other action. But that is to be expected; both actions are First Amendment challenges to local sign ordinances. It would be somewhat surprising if an attorney working on both cases did not use pleadings in the former case as at least a starting point for pleadings in a subsequent one. But the key point for current purposes is that the time that Oppenheimer's counsel claims for drafting complaints here does not strike the Court as excessive, even considering that he had a baseline from which to start.

That said, one aspect of the City's objections gives the Court some pause—the City's observation that part of the excessive litigation cost here was driven by Oppenheimer's "early motion practice." (Obj., Doc. 67, #684–85). Having reviewed the docket, the Court agrees that Oppenheimer contributed to this case being far more

9

extensively litigated than it needed to be. For example, as described above, on two separate occasions, Oppenheimer filed for default *the day after* a responsive pleading was due. That strikes the Court as gamesmanship, rather than a good faith effort to resolve the matter. And, based on the Court's review of the billing records, it appears that Oppenheimer's counsel expended roughly 14.4 hours addressing issues relating to those default findings. (*See* Hartman Fee Statement, Doc. 56-2). Accordingly, the Court finds that an additional reduction of $5,956[2] is warranted.[3]

## CONCLUSION

For the foregoing reasons, the Court **ADOPTS** the R&R (Doc. 66) **IN PART**, and thereby **GRANTS** Oppenheimer's Motion for Fees and Costs (Doc. 55) **IN PART**, revising the fee award downward to $60,474.52, and awarding $486.88 in costs.

Accordingly, the Court **GRANTS JUDGMENT** in Oppenheimer's favor against the City in the amount of $61,961.40 (i.e., attorneys' fees, plus costs, plus the $1,000 previously awarded in nominal damages). The Clerk shall **ENTER JUDGMENT** in that amount and **TERMINATE** this matter on the Court's docket.

---

[2] This represents 14.4 hours x $517.08/hr x 80%. Multiplying by 80% is necessary, because the Magistrate Judge's final award of $66,430.52 already applies a global reduction of 20% to all hours incurred, including those incurred on the default judgment activities. Thus, in determining the net amount to be removed, that Court must apply that same reduction. Stated alternatively, if the lodestar is reduced by 14.4 hours x $517.08/hr, or $7445.95, as the Court finds that it should be, the net award changes by 80% of that amount.

[3] This could be characterized as a challenge to the lodestar hours, which, as noted above, the City declined to expressly make. At the same time, however, in the City's objection to the "global reduction," as described above, the City did point to Oppenheimer's "early motion practice," which the Court treats as a reference to Oppenheimer's attempt to secure default judgment. Thus, the Court concludes that the City has preserved its objection to the hours related to that activity, even if the City characterized it as a challenge to the global reduction.

**SO ORDERED.**

September 13, 2022
**DATE**

                **DOUGLAS R. COLE**
                **UNITED STATES DISTRICT JUDGE**